**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Tiffany Armstrong, | No. CV-19-01941-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Target Stores Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Target Corporation's Motion for Summary Judgment Re: Plaintiff's Claims (Doc. 45, MSJ), to which Plaintiff Tiffany Armstrong filed a Response (Doc. 51, Resp.) and Target filed a Reply (Doc. 53, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the following reasons, the Court concludes that Target is not entitled to summary judgment.

## I.    BACKGROUND

Tiffany Armstrong is a blind woman who suffers from diabetes and gluten sensitivity. (Doc. 52-1, PSOF Ex. 2, Armstrong Dep. at 20-21, 32.) She claims she discovered her gluten condition nearly a decade ago after a colonoscopy revealed a gluten intolerance that her doctor suggested could develop into celiac disease. (PSOF Armstrong Dep. at 24.) Based on her results, the hospital referred her to Joanne Thompson, who is described as either a nutritionist or dietician, to help Armstrong manage her diet (PSOF Armstrong Dep. at 25-26.) Armstrong states that Thompson subsequently "diagnosed" her

with celiac disease. (Doc. 46-1, DSOF Ex. A, Armstrong Dep. at 23.) After working with Thompson and experimenting with how much gluten she can tolerate, Armstrong discovered that her diet must be completely gluten-free. (PSOF Armstrong Dep. at 26-28.) Since then, Armstrong has generally followed the advice of her medical providers that she should follow the same diet as someone with celiac disease, and according to Armstrong, her condition is quite easily managed by simply avoiding gluten. (PSOF Armstrong Dep. at 26.) However, on two occasions since she began working with Thompson, Armstrong accidentally ingested gluten and experienced inflammation, nausea, vomiting, and other symptoms. (PSOF Armstrong Dep. at 28-29.) Despite her past adverse reactions to gluten, Armstrong does not presently proffer any evidence of expert testimony or a formal medical diagnosis of celiac disease.

Because of her conditions, Armstrong is very regimented in the foods she eats. As a part of her normal breakfast, Armstrong enjoys a quarter-cup of granola in her yogurt, but because of her gluten sensitivity she only keeps gluten-free granola in her house. At the time of this incident, Armstrong would shop at a Target store. For several months, Armstrong used the same Target employee as a shopping assistant to help her select items to purchase. Armstrong informed the shopping assistant that she has a gluten allergy and could not have foods containing gluten or wheat, including foods labeled that they "may contain wheat." In February 2017, Armstrong sought to purchase granola made by the Target brand "Simply Balanced." The granola bag did not claim to contain gluten, but it did have a warning that the granola "may contain . . . wheat." (Doc. 46-2, DSOF Ex. B.) The shopping assistant failed to read this label to Armstrong, and Armstrong purchased the granola. She estimates that in the following weeks she consumed approximately seven bags of the Simply Balanced granola. (PSOF Armstrong Dep. at 43.)

On April 6, 2017, Armstrong began experiencing nausea and vomiting and checked into the Chandler Regional Medical Center emergency room. The staff ran lab tests, and Armstrong's results came back abnormal. The emergency room then stabilized her and sent her home. On April 9, she returned to the hospital with nausea, vomiting, and diarrhea. She

1   was diagnosed with acute viral gastroenteritis and remained in the hospital until she was

2   discharged on April 12. Armstrong never mentioned her gluten intolerance to the doctors

3   at either hospital visit as she "already knew" that gluten was the cause because her

4   intolerance has "been going on for years." (DSOF Armstrong Dep. at 19-20.) After the

5   April 12 hospital visit, Armstrong's mother visited Armstrong's house and searched the

6   pantry, where she found the Simply Balanced granola that warned it may contain wheat.

7   Armstrong discontinued adding the granola to her breakfast, and her symptoms ceased.

8   (PSOF Armstrong Dep. at 109.) Armstrong claims that the wheat in the granola was the

9   cause of her illnesses.

10       In this lawsuit, Armstrong raises a claim of negligence, alleging that Target is

11  vicariously liable for the shopping assistant's failure to read the granola bag's label. (Doc.

12  1-3, Am. Compl.). Target now moves for summary judgment.

13  ## II.   LEGAL STANDARD

14       Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

15  appropriate when: (1) the movant shows that there is no genuine dispute as to any material

16  fact; and (2) after viewing the evidence most favorably to the non-moving party, the

17  movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*,

18  477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th

19  Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome

20  of the suit under governing [substantive] law will properly preclude the entry of summary

21  judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue"

22  of material fact arises only "if the evidence is such that a reasonable jury could return a

23  verdict for the nonmoving party." *Id.*

24       In considering a motion for summary judgment, the court must regard as true the

25  non-moving party's evidence, if it is supported by affidavits or other evidentiary material.

26  *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party

27  may not merely rest on its pleadings; it must produce some significant probative evidence

28  tending to contradict the moving party's allegations, thereby creating a material question

of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.   ANALYSIS

To establish a *prima facie* negligence claim under Arizona law, Armstrong must demonstrate the following elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.2d 228, 230 (Ariz. 2007). Target's only argument in support of its request for summary judgment is that Armstrong cannot establish causation without the use of expert testimony or a formal diagnosis of celiac disease from a physician.

A negligence claim such as Armstrong's requires a showing that Target's conduct— by and through the conduct of its agent—proximately caused Armstrong's injuries. *See Benkendorf v. Advanced Cardiac Specialists*, 269 P.3d 704, 706 (Ariz. Ct. App. 2012). "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am.*, 789 P.2d 1040, 1047 (Ariz. 1990) (citations omitted). Expert testimony is required whenever proof of an element of a claim, such as causation, calls for information that is outside an ordinary person's common knowledge. *See Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (holding that a plaintiff must proffer admissible expert testimony when special expertise is necessary for a fact-finder to draw a causal inference); *see also Wills v. Amerada Hess*

*Corp.*, 379 F.3d 32, 40-41 (2d Cir. 2004) (stating expert testimony as to causation is necessary "where a lay juror could not be expected to intuit the causal relationship between the acts in question and the injury"). Indeed, the case that gave birth to the current standard for a court's evaluation of the reliability of expert testimony, *Daubert v. Merrell Dow Pharm., Inc.*, involved a question of causation requiring special expertise, namely, whether a drug could cause limb defects. 43 F.3d 1311, 1313 (9th Cir. 1995).

Target argues that, under Arizona law, expert testimony is required to establish causation in this case, and therefore Armstrong cannot prove causation because she has not disclosed any expert witnesses. In support of its argument, Target cites *Cloud v. Pfizer Inc.*, where the court ultimately held that in the absence of expert testimony, "[p]laintiff cannot prove causation." 198 F. Supp. 2d. 1118, 1138-39 (D. Ariz. 2001). In *Cloud*, the plaintiff alleged that the defendant's drug caused the plaintiff's husband to commit suicide. The question of whether certain drugs cause those who consume them to commit suicide is a complicated scientific question and is firmly outside an ordinary person's common knowledge. Here, however, the question of whether wheat consumption caused an adverse reaction in someone who has a history of adverse reactions to wheat is within the realm of the lay jury's understanding. Expert testimony is not needed here, and the lack thereof does not warrant summary judgment for Target.

Target further argues that there is no evidence to establish a causal link between Armstrong's symptoms and her allergic reaction to wheat due to celiac disease because Armstrong has no formal diagnosis of celiac disease by a medical doctor. Furthermore, none of her treating physicians from her April 2017 hospital visits diagnosed her with celiac disease or found gluten sensitivity to be the cause of her symptoms. However, a formal medical diagnosis is not necessary to prove causation in this case because this is not a question of specific medical diagnosis. Rather, this is a question of whether Armstrong's gluten consumption caused her illnesses. Target's own expert, Dr. Larry Pass, stated that several common disorders can cause similar symptoms to those that led Armstrong to her hospital visits. (Doc. 46-3, DSOF Ex. 2 to Ex. C, Pass Aff.). Moreover, there is ample

circumstantial evidence that could facilitate an inference of causation, including Armstrong's testimony about her struggles with gluten, her hospital visits, and the disappearance of her symptoms after she stopped eating the granola. Armstrong has presented sufficient evidence to create a genuine issue of material fact that should be decided by a jury. Because Target does not raise any further issues in support of its request for summary judgment, the Court will deny Target's Motion and this matter will proceed to trial.

IT IS THEREFORE ORDERED denying Target Corporation's Motion for Summary Judgment (Doc. 45).

IT IS FURTHER ORDERED that the Court will set a pre-trial status conference by separate Order.

Dated this 19th day of October, 2020.

Honorable John J. Tuchi
United States District Judge